UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**FIDELITY NATIONAL LAW GROUP**
Christopher J. Balala, Esq. (Attorney ID 030732010)
105 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Phone: (973) 863-7018
Fax: (973) 535-3407
Christopher.Balala@fnf.com
Attorneys for Creditor
FIDELITY NATIONAL TITLE INSURANCE COMPANY

In Re:

JOHN MICHAEL WALSH and ROSEMARY JOANNE WALSH,

                    Debtors.

FIDELITY NATIONAL TITLE INSURANCE COMPANY,

                    Plaintiff,

v.

JOHN MICHAEL WALSH aka JOHN M. WALSH aka JOHN WALSH and ROSEMARY JOANNE WALSH aka ROSEMARY J. WALSH aka ROSEMARY EATON WALSH aka ROSEMARY J. EATON WALSH aka ROSEMARY JOANNE EATON WALSH,

                    Defendant.

Chapter: 7

Case No.: 19-13567 KCF

Adv No.:

Judge: Kathryn C. Ferguson

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§523(a)(2), (6)**

Plaintiff, Fidelity National Title Insurance Company ("Plaintiff" or "FNTIC"), by and through its undersigned attorneys, by way of Complaint against the Debtors, John Michael Walsh

aka John M. Walsh aka John Walsh ("John" or "Debtor") and Rosemary Joanne Walsh aka Rosemary Eaton Walsh aka Rosemary J. Eaton Walsh aka Rosemary Joanne Eaton Walsh ("Rosemary" or "Debtor", collectively "Debtors"), to determine non-dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6), alleges as follows:

## THE PARTIES

1. Plaintiff is a foreign corporation domiciled in the State of Florida with an office located at 601 Riverside Avenue, Jacksonville, Florida 32204, and is duly authorized to do business in the State of New Jersey.

2. Plaintiff is engaged, inter alia, in the business of issuing title assurances.

3. John is an individual with a residential address located at 229 Medford Lakes Rd., Vincentown, New Jersey 08088.

4. Rosemary is an individual with a residential address located at 229 Medford Lakes Rd., Vincentown, New Jersey 08088.

5. Upon information and belief, John and Rosemary are married as husband and wife.

## JURSIDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1334.

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8. To the extent that this Court determines that this matter is not a core proceeding, Plaintiff consents to the Court's jurisdiction to enter a final judgment herein.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## SUMMARY OF THE ACTION

10. On February 21, 2019, Debtors filed a voluntary Chapter 7 petition for relief with this Court.

11. The petition does not list FNTIC as a creditor.

12. As a result, Plaintiff received no notice of Debtors' instant bankruptcy filing.

13. This bankruptcy proceeding was discovered while researching Debtors in an attempt to collect on the debt owed.

14. Plaintiff now files this action seeking a determination that the obligations owed by Debtors to Plaintiff are excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6).

## FACTUAL BACKGROUND

### A. The Debtor's Undisclosed Judgments

15. The Debtors purposefully failed to disclose at least three judgments against them in connection with the closing of a real estate transaction, for which Plaintiff insured (collectively, the "Undisclosed Judgments").

16. The first of the Undisclosed Judgments was entered in favor of the Estate of Renee Halpecka on September 18, 2009 in the amount of $580,422.59, bearing judgment number J-222774-09, and was entered against the Debtors (the "Estate of Halpecka Judgment"). A true and correct copy of the Estate of Halpecka Judgment is attached hereto as **Exhibit A**.

17. Upon information and belief, upon her death, Renee Halpecka a/k/a Irene Halpecka's estate was to be left to Debtor, Andrea Price and Brenda Hedrick in equal shares.

18. The Estate of Halpecka Judgment resulted from litigation commenced by Brenda Hedrick and Andrea Price in the Superior Court of New Jersey, Chancery Division, Probate Part, Burlington County, bearing docket number 2005-0758, and identified as In the Matter of the Estate of Renee Halpecka (the "Probate Lawsuit").

19. The Debtors fully defended the Probate Lawsuit, which ultimately resulted in the Estate of Halpecka Judgment being entered against them, jointly. A true and correct copy of the Order for Entry of Final Judgment is attached hereto as **Exhibit B**.

20. In issuing the Estate of Halpecka Judgment, the Honorable Michael J. Hogan, P.J.Ch. determined that Rosemary had a confidential relationship with Halpecka and exercised undue influence to convert probate assets into non-probate assets, which she accomplished through a series of inter vivos gifts and transactions that left nearly all of Halpecka's assets other than her real estate, payable to Walsh on Halpecka's death. Id.

21. In issuing the Estate of Halpecka Judgment, the Honorable Michael J. Hogan, P.J.Ch. determined that John was aware of, and enriched by, the activities of Rosemary and the substantial sums of money that were transferred into joint accounts. Id.

22. The Debtors then appealed the Judge Hogan decision to the Superior Court of New Jersey, Appellate Division, in a case bearing docket number A-0752-10T3.

23. The Appellate Division affirmed Judge Hogan's decision and stated that it was satisfied that the record included clear and convincing evidence of undue influence amounting to fraud.

24. The Debtors were represented by their current bankruptcy attorney on this appeal[1].

---

[1] Debtors's current bankruptcy attorney likely represented them at the trial level as well, but the currently available court documents are inconclusive on this fact.

25. Certification was then submitted to the Supreme Court of New Jersey by Debtors, which was subsequently denied. Estate of Halpecka v. Walsh, 217 N.J. 53 (2014).

26. Chronologically, the second of the Undisclosed Judgments was entered in favor of Lorie M. McNeely, Esq. on October 8, 2009 in the amount of $11,176.10, bearing judgment number J-244938-09, and was entered against Rosemary, only (the "McNeely Judgment"). A true and correct copy of the McNeely Judgment is attached hereto as **Exhibit C**.

27. The third of the Undisclosed Judgments was entered in favor of Brenda Hedrick and Andrea Price on October 5, 2010 in the amount of $101,806.12, bearing judgment number J-260091-10, and was entered against the Debtors, jointly (the "Hedrick-Price Judgment"). A true and correct copy of the McNeely Judgment is attached hereto as **Exhibit D**.

28. Upon information and belief, the Hedrick-Price Judgment stemmed from the Probate Lawsuit as well.

29. Nearly six years after entry of the Hedrick-Price Judgment, Debtors filed a motion to vacate the part of the judgment requiring them to pay counsel fees (the "Motion to Vacate").

30. The Motion to Vacate was denied and another appeal was taken before the Superior Court of New Jersey, Appellate Division, bearing case number A-5400-15T1.

31. The Appellate Division affirmed the trial court's decision in denying the Motion to Vacate stating that after the Supreme Court of New Jersey denied certification it was settled that Rosemary committed undue influence and fraud and that John was complicit in and unjustly enriched by her conduct.

32. At all times relevant, the Debtors were well aware of the existence of the Undisclosed Judgments.

**B. The Insured Transaction**

33. On or about August 31, 2018 (the "Closing"), the Debtors conveyed the real property located at 1341 Simpson Avenue, Ocean City, New Jersey 085226 (the "Property") to Vincent S. Viney and Kimberly Viney via Deed with Covenant Against Grantor's Acts for $305,000.00, (the "Vesting Deed"). A true and correct copy of the Vesting Deed is attached hereto as **Exhibit E**.

34. On September 18, 2018, the Vesting Deed was recorded in the Cape May County Clerk's Office in Official Record Book D3813, Page 683. Id.

35. The Vesting Deed contained a "covenant as to Grantor's Acts" which promised that John and Rosemary did not allow anyone else to obtain legal rights which affect the Property such as a judgment to be entered. Id.

36. As part of this transaction, Surety Title Company, LLC (the "Agent") issued an owner's policy of title insurance, underwritten by Plaintiff, to the purchaser of the Property, Vincent S. Viney and Kimberly Viney (the "Insureds") in the amount of $305,000.00 (the "Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit F**.

37. In connection with the Closing, the Debtors executed an Affidavit of Title representing that judgments as they appeared on a judgment search were not against them. A true and correct copy of the Affidavit of Title with Judgment Search is attached hereto as **Exhibit G**.

38. The Debtors duly executed the Affidavit of Title, which was also notarized. Id.

39. The Debtors executed the Affidavit of Title, "we make this affidavit in order to induce the Buyer(s) to accept our deed. We are aware that the Buyer(s) and their Mortgage lender rely on our truthfulness and the statements made in this affidavit." Id.

40. The Affidavit of Title further stated that the Debtors had not allowed any interests to be created which affected their ownership or use of the Property, there were no pending lawsuits or insolvency proceedings against them, and that all liens listed on the enclosed judgment lien search were not against them, but against others with the same or similar names. Id.

41. Although the Debtors were aware of the Undisclosed Judgments entered against them, they fraudulently executed the Affidavit of Title so that the Closing could take place and the Property could be conveyed.

### C. Plaintiff's Loss

42. On or about December 5, 2018, the Insureds received contact from Suzanne Koulesis, Esq., Court Appointed Administrator ("Koulesis") for the Estate of Renee Halpecka regarding two of the outstanding Undisclosed Judgments: the Estate of Halpecka Judgment and the Hedrick-Price Judgment, and subsequently a claim for coverage under the Policy on behalf of the Insureds was opened (the "Claim").

43. The Claim investigation also revealed the McNeely Judgment.

44. On or about March 25, 2019, Plaintiff, not as a volunteer, but pursuant to its obligations under the Policy, settled the matter with the holders of the Estate of Halpecka Judgment, the McNeely Judgment, and the Hedrick-Price Judgment in the total amount of $305,000.00. A true and correct copy of the Loss Payment Wire Confirmation is attached hereto as **Exhibit H**.

45. In exchange for the Loss Payment, the Estate of Halpecka Judgment, the McNeely Judgment, and the Hedrick-Price Judgment were all released from the Property to protect the

Insureds' interest in the same ("Deed of Release").  A true and correct copy of the Deed of Release is attached hereto as **Exhibit I**.

46. The Deed of Release was subsequently recorded in the Cape May County Clerk's Office in Official Record Book R164, Page 142.  Id.

47. As a direct and proximate result of the wrongful acts and false statements of Debtors, Plaintiff pursuant to its obligations under the Policy was forced to tender the Loss Payment.

48. The Debtors duly executed the Affidavit of Title knowing it contained false statements.

49. The Debtors' fraudulent Affidavit of Title caused the Plaintiff's damages.

50. The Debtors were unjustly enriched, by Plaintiff having partially satisfied their debt owed on the Undisclosed Judgments.

51. Plaintiff is subrogated to the rights of its Insureds against Debtors.

52. Plaintiff, directly and as subrogee to the rights, claims, and causes of action of its Insureds, brings this action against Debtors for the damages sought herein.

53. Plaintiff duly demanded and hereby does demand indemnification and payment from Debtors for the amounts claimed herein.

54. Debtors' fraudulent and willful conduct in executing the Affidavit of Title caused the damages asserted herein, and therefore the monies owed to Plaintiff are non-dischargeable.

## COUNT I

### 11 U.S.C. § 523(a)(2)

55. Plaintiff repeats and realleges all allegations contained in the preceding paragraphs as if fully set forth herein.

56. Debtors obtained money, and conveyed real property, from the above-referenced sale of Property through false pretenses, false representations, and actual fraud.

57. Debtors obtained money, and conveyed real property, from the above-referenced sale of the Property through use of the Affidavit of Title, which was materially false, with respect to their financial condition, namely the Undisclosed Judgments entered against them.

58. The Insureds and FNTIC relied on this fraudulent Affidavit of Title that was being offered with the intent to deceive.

59. At the time the Debtors conveyed the Property, they falsely represented that the Undisclosed Judgments contained in the judgment search were not against them or encumbered the Property.

60. At the time Debtors made these written statements, they knew or should have known that they were materially false.

61. Debtors' financial condition, including their indebtedness pursuant to the Undisclosed Judgments was a material fact on which the Insureds and FNTIC relied in the Closing and issuance of the Policy.

62. Debtors' false statements contained in the Affidavit of Title directly and proximately caused Plaintiff's Insureds to seek coverage pursuant to the Policy and cause Plaintiff the damages complained of herein.

63. Upon information and belief, Plaintiff's Insureds reasonably relied upon Debtor's false pretenses, false representations, and fraudulent conduct, to their detriment, when purchasing the Property.

64. Plaintiff reasonably relied upon Debtors' false pretenses, false representations, and fraudulent conduct, to its detriment, when underwriting the Policy.

65. Upon information and belief, Debtors intended to deceive Plaintiff's Insureds to complete the Closing.

66. As a direct and proximate result of Debtors' false pretenses, false representations, and fraudulent conduct, Plaintiff incurred the Loss Payment in the amount of $305,000.00.

67. Plaintiff was unjustly enriched by the Loss Payment, since it partially satisfied their obligations under the Undisclosed Judgments.

68. Plaintiff demands indemnification and reimbursement for the Loss Payment made.

69. Accordingly, the debt owed to Plaintiff is non-dischargeable pursuant to 11 U.S.C. §523(a)(2) because this debt is for money obtained by false pretenses, false representations, and actual fraud.

70. Upon finding that the debt is non-dischargeable, the Court should enter a judgment in favor of Plaintiff and against Debtors in the amount of $305,000.00 plus interest and costs.

## COUNT II
### 11 U.S.C. § 523(a)(6)

71. Plaintiff repeats and realleges all allegations contained in the preceding paragraphs as if fully set forth herein.

72. Debtors obtained money from the above referenced conveyance of the Property through willful and malicious conduct, which caused injury to Plaintiff.

73. Debtors deliberately and knowingly failed to reveal the Undisclosed Judgments entered against them.

74. In fact, Debtors swore the Undisclosed Judgments were not theirs.

75. Debtors knew that if they did admit to the Undisclosed Judgments, the Closing could not take place and/or they would not receive proceeds from the conveyance of the Property.

76. Debtors deliberately and knowingly took money from the conveyance of the Property, while falsely representing that there were no encumbrances, liens, or judgments.

77. Debtors knew that their false representations on the Affidavit of Title would cause injury.

78. Debtors' conduct did cause injury to Plaintiff's Insureds and to Plaintiff.

79. As a direct and proximate cause of Debtors' conduct, Plaintiff incurred loss in the amount of $305,000.00.

80. Accordingly, the debt owed to Plaintiff is non-dischargeable pursuant to 11 U.S.C. §523(a)(6) because this debt was caused by willful and malicious injury to Plaintiff.

81. Upon finding that the debt is non-dischargeable, the Court should enter a judgment in favor of Plaintiff and against Debtors in the amount of $305,000.00 plus interest and costs.

**WHEREFORE**, Plaintiff, Fidelity National Title Insurance Company requests that this Court:

a. Enter Judgment in its favor and against the Debtors John Michael Walsh aka John M. Walsh aka John Walsh and Rosemary Joanne Walsh aka Rosemary J. Walsh, Rosemary Eaton

Walsh aka Rosemary J. Eaton Walsh aka Rosemary Joanne Eaton Walsh in the amount of $305,000.00, plus interest and costs;

    b.    Determine that the Judgment, in the amount of $305,000.00, is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6);

    c.    For such other and further relief as this Court deems just, equitable, and proper.

**FIDELITY NATIONAL LAW GROUP**
Attorneys for Creditor,
Fidelity National Title Insurance Company

Date: May 23, 2019    By: /s/ Christopher J. Balala, Esq.
    Christopher J. Balala, Esq.
    105 Eisenhower Parkway, Suite 103
    Roseland, NJ 07068