UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**FIDELITY NATIONAL LAW GROUP**
Christopher J. Balala, Esq. (Attorney ID 030732010)
105 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Phone: (973) 863-7018
Fax: (973) 535-3407
Christopher.Balala@fnf.com
Attorneys for Creditor
CHICAGO TITLE INSURANCE COMPANY

In Re:

JOHN MICHAEL WALSH and ROSEMARY JOANNE WALSH,

                    Debtors.

CHICAGO TITLE INSURANCE COMPANY

                    Plaintiff,

v.

ROSEMARY JOANNE WALSH aka ROSEMARY J. WALSH aka ROSEMARY EATON WALSH aka ROSEMARY J. EATON WALSH aka ROSEMARY JOANNE EATON WALSH,

                  Defendant.

Chapter: 7

Case No.: 19-13567 KCF

Adv No.:

Judge: Kathryn C. Ferguson

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§523(a)(2), (6)**

Plaintiff, Chicago Title Insurance Company ("Plaintiff" or "CTIC"), by and through its undersigned attorneys, by way of Complaint against the Debtor, Rosemary Joanne Walsh aka Rosemary Eaton Walsh aka Rosemary J. Eaton Walsh aka Rosemary Joanne Eaton Walsh

("Debtor" or "Walsh"), to determine non-dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6), alleges as follows:

## THE PARTIES

1. Plaintiff is a foreign corporation domiciled in the State of Florida with an office located at 601 Riverside Avenue, Jacksonville, Florida 32204, and is duly authorized to do business in the State of New Jersey.

2. Plaintiff is engaged, inter alia, in the business of issuing title assurances.

3. Debtor is an individual with a residential address located at 229 Medford Lakes Rd., Vincentown, New Jersey 08088.

## JURSIDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1334.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6. To the extent that this Court determines that this matter is not a core proceeding, Plaintiff consents the Court's jurisdiction to enter final judgment herein.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## SUMMARY OF THE ACTION

8. On February 21, 2019, Debtor filed a voluntary Chapter 7 petition for relief with this Court, with co-debtor John Michael Walsh ("Co-Debtor").

9. The petition does not list CTIC as a creditor.

10. As a result, Plaintiff received no notice of Debtor's instant bankruptcy filing.

11. This bankruptcy proceeding was discovered while researching Debtor in an attempt to collect on the debt owed.

12. Plaintiff now files this action seeking a determination that the obligations owed by Debtor to Plaintiff are excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6).

## FACTUAL BACKGROUND

### A. The Debtor's Undisclosed Judgments

13. The Debtor purposefully failed to disclose at least three judgments against her in connection with the closing of a real estate transaction, for which Plaintiff insured (collectively, the "Undisclosed Judgments").

14. The first of the Undisclosed Judgments was entered in favor of the Estate of Renee Halpecka on September 18, 2009 in the amount of $580,422.59, bearing judgment number J-222774-09, and was entered against Debtor and her Co-Debtor (the "Estate of Halpecka Judgment"). A true and correct copy of the Estate of Halpecka Judgment is attached hereto as **Exhibit A**.

15. Upon information and belief, upon her death, Renee Halpecka a/k/a Irene Halpecka's estate was to be left to Debtor, Andrea Price and Brenda Hedrick in equal shares.

16. The Estate of Halpecka Judgment resulted from litigation commenced by Brenda Hedrick and Andrea Price in the Superior Court of New Jersey, Chancery Division, Probate Part, Burlington County, bearing docket number 2005-0758, and identified as In the Matter of the Estate of Renee Halpecka ("Probate Lawsuit").

17. Walsh fully defended the Probate Lawsuit, which ultimately resulted in the Estate of Halpecka Judgment being entered. A true and correct copy of the Order for Entry of Final Judgment is attached hereto as **Exhibit B**.

18. In issuing the Estate of Halpecka Judgment, the Honorable Michael J. Hogan, P.J.Ch. determined that Walsh had a confidential relationship with Halpecka and exercised undue influence to convert probate assets into non-probate assets, which she accomplished through a series of inter vivos gifts and transactions that left nearly all of Halpecka's assets other than her real estate, payable to Walsh on Halpecka's death

19. Walsh and her Co-Debtor then appealed the Judge Hogan decision to the Superior Court of New Jersey, Appellate Division, bearing case number A-0752-10T3.

20. The Appellate Division affirmed Judge Hogan's decision and stated that it was satisfied that the record included clear and convincing evidence of undue influence amounting to fraud.

21. Walsh was represented by her current bankruptcy attorney on this appeal[1].

22. Certification was then submitted to the Supreme Court of New Jersey by Debtor and her Co-Debtor, which was denied. Estate of Halpecka v. Walsh, 217 N.J. 53 (2014).

23. Chronologically, the second of the Undisclosed Judgments was entered in favor of Lorie M. McNeely, Esq. on October 8, 2009 in the amount of $11,176.10, bearing judgment number J-244938-09, and was entered against Debtor (the "McNeely Judgment"). A true and correct copy of the McNeely Judgment is attached hereto as **Exhibit C**.

24. The third of the Undisclosed Judgments was entered in favor of Brenda Hedrick and Andrea Price on October 5, 2010 in the amount of $101,806.12, bearing judgment number J-

---

[1] Walsh's current bankruptcy attorney likely represented her and her Co-Debtor at the trial level as well, but the currently available court documents are inconclusive on this fact.

260091-10, and was entered against Debtor and her Co-Debtor (the "Hedrick-Price Judgment"). A true and correct copy of the McNeely Judgment is attached hereto as **Exhibit D**.

25. Upon information and belief, the Hedrick-Price Judgment stemmed from the Probate Lawsuit as well.

26. Nearly six years after entry of the Hedrick-Price Judgment, Debtor and her Co-Debtor filed a motion to vacate the part of the judgment requiring them to pay counsel fees (the "Motion to Vacate").

27. The Motion to Vacate was denied and another appeal was taken before the Superior Court of New Jersey, Appellate Division, bearing case number A-5400-15T1.

28. The Appellate Division affirmed the trial court's decision in denying the Motion to Vacate stating that after the Supreme Court of New Jersey denied certification it was settled that Walsh committed undue influence and fraud and that her Co-Debtor was complicit in and unjustly enriched by her conduct.

29. At all times relevant, the Debtor was well aware of the existence of the Undisclosed Judgments.

### B. The Insured Transaction

30. On or about June 30, 2017 (the "Closing"), John Sherman, Individually and as Executor of the Estate of Ronald L. King a/k/a Ronald Lawler King, Carole Anne Trakimas, Sandra Joan Sirolly, Mary Kim Daly, and Debtor, Individually and as Executrix of the Estate of Lynn Patricia Sherman a/k/a Lynn P. Sherman (collectively, the "Sellers") conveyed the real property located at 137 Seventh Street, Beach Haven, New Jersey (the "Property") to DPJ

Properties, LLC via Bargain and Sale Deed for $1,180,000.00, (the "Vesting Deed"). A true and correct copy of the Vesting Deed is attached hereto as **Exhibit E**.

31. On July 25, 2017, the Vesting Deed was recorded in the Ocean County Clerk's Office in Official Record Book 16812, Page 456. Id.

32. The Vesting Deed contained a "covenant as to Grantor's Acts" which promised that Walsh did not allow anyone else to obtain legal rights which affect the Property such as a judgment to be entered. Id.

33. As part of this transaction, American Abstract Agency, Inc. (the "Agent") issued an owner's policy of title insurance, underwritten by Plaintiff, to the purchaser of the Property, DPJ Properties, LLC (the "Insured") in the amount of $1,180,000.00 (the "Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit F**.

34. In connection with the Closing, the Debtor was presented with a judgment search and she executed an Affidavit of Title representing that judgments as they appeared on the search were not against her. A true and correct copy of the Affidavit of Title with Judgment Search is attached hereto as **Exhibit G**.

35. The Debtor duly executed the Affidavit of Title, which was also notarized. Id.

36. The Debtor executed the Affidavit of Title, "in order to induce the Buyer(s) to accept [the] deed." Id.

37. The Affidavit of Title further stated that Walsh had not allowed any interests to be created which affected her ownership or use of the Property, there were no pending lawsuits or insolvency proceedings against her, and that all liens listed on the enclosed judgment lien search were not against her, but against others with the same or similar names. Id.

38. The Affidavit of Title explicitly contained the Undisclosed Judgments.

39. Upon information and belief, on the Affidavit of Title, next to the Estate of Halpecka Judgment, a line was drawn through said judgment, and the Debtor wrote "no Rosemary Walsh 6/30/17". Id.

40. Upon information and belief, on the Affidavit of Title, next to the McNeely Judgment, a line was drawn through said judgment, and the Debtor wrote "no". Id.

41. Upon information and belief, on the Affidavit of Title, next to the Hedrick-Price Judgment, a line was drawn through said judgment, and the Debtor wrote "Rosemary Walsh 6/30/17". Id.

42. Although the Debtor was aware of the Undisclosed Judgments entered against her, she fraudulently executed the Affidavit of Title so that the Closing could take place and she could receive proceeds from the conveyance.

**C. Plaintiff's Loss**

43. On or about August 31, 2018, the Insured submitted a claim for coverage under the Policy to Plaintiff (the "Claim").

44. The Claim was based on the Insured having received contact from Suzanne Koulesis, Esq., Court Appointed Administrator for the Estate of Renee Halpecka regarding two of the outstanding Undisclosed Judgments: the Estate of Halpecka Judgment and the Hedrick-Price Judgment.

45. On or about October 9, 2018, Kourlesis initiated a suit in the Superior Court of New Jersey, Chancery Division, Burlington County seeking a restraining order and injunction against the Insured from transferring title to the Property (the "Kourlesis Litigation").

46. On or about November 2, 2018, Plaintiff, not as a volunteer, but pursuant to its obligations under the Policy, settled the matter with the holders of the Estate of Halpecka Judgment, the McNeely Judgment, and the Hedrick-Price Judgment in the total amount of $175,000.00. A true and correct copy of the Loss Payment Wire Confirmation is attached hereto as **Exhibit H**.

47. In exchange for the Loss Payment, the Kourlesis Litigation was subsequently dismissed and the Estate of Halpecka Judgment, the McNeely Judgment, and the Hedrick-Price Judgment were all released from the Property to protect the Insured's interest in the same. A true and correct copy of the Deed of Release is attached hereto as **Exhibit I**.

48. As a direct and proximate result of the wrongful acts and false statements of Debtor, Plaintiff pursuant to its obligations under the Policy was forced to tender the Loss Payment.

49. The Debtor duly executed the Affidavit of Title knowing it contained false statements.

50. The Debtor's fraudulent Affidavit of Title caused the Plaintiff's damages.

51. The Debtor was unjustly enriched, by Plaintiff having partially satisfied her debt owed on the Undisclosed Judgments.

52. Plaintiff is subrogated to the rights of its Insured against Debtor.

53. Plaintiff, directly and as subrogee to the rights, claims, and causes of action of its Insureds, brings this action against Debtor for the damages sought herein.

54. Plaintiff duly demanded and hereby does demand indemnification and payment from Debtor for the amounts claimed herein.

55. Debtor's fraudulent and willful conduct in executing the Affidavit of Title caused the damages asserted herein, and therefore the monies owed to Plaintiff are non-dischargeable.

## **COUNT I**

### **11 U.S.C. § 523(a)(2)**

56. Plaintiff repeats and realleges all allegations contained in the preceding paragraphs as if fully set forth herein.

57. Debtor obtained money from the above-referenced sale of Property through false pretenses, false representations, and actual fraud.

58. Debtor obtained money from the above-referenced sale of the Property through use of the Affidavit of Title, which was materially false, with respect to her financial condition, namely the Undisclosed Judgments entered against her.

59. The Insured and CTIC relied on this fraudulent Affidavit of Title that was being offered with the intent to deceive.

60. At the time the Debtor conveyed the Property, she falsely represented that the Undisclosed Judgments contained in the judgment search were not against her or encumbered the Property.

61. At the time Debtor made these written statements, she knew or should have known that they were materially false.

62. Debtor's financial condition, including her indebtedness pursuant to the Undisclosed Judgments was a material fact on which the Insured and CTIC relied in the Closing and issuance of the Policy.

63. Debtor's false statements contained in the Affidavit of Title directly and proximately caused Plaintiff's Insured to seek coverage pursuant to the Policy and cause Plaintiff the damages complained of herein.

64. Upon information and belief, Plaintiff's Insured reasonably relied upon Debtor's false pretenses, false representations, and fraudulent conduct, to its detriment, when purchasing the Property.

65. Plaintiff reasonably relied upon Debtor's false pretenses, false representations, and fraudulent conduct, to its detriment, when issuing the Policy.

66. Upon information and belief, Debtor intended to deceive Plaintiff's Insured to complete the Closing.

67. As a direct and proximate result of Debtor's false pretenses, false representations, and fraudulent conduct, Plaintiff incurred the Loss Payment in the amount of $175,000.00.

68. Plaintiff was unjustly enriched by the Loss Payment, since it partially satisfied her obligations under the Undisclosed Judgments.

69. Plaintiff demands indemnification and reimbursement for the Loss Payment made.

70. Accordingly, the debt owed to Plaintiff is non-dischargeable pursuant to 11 U.S.C. §523(a)(2) because this debt is for money obtained by false pretenses, false representations, and actual fraud.

71. Upon finding that the debt is non-dischargeable, the Court should enter a judgment in favor of Plaintiff and against Debtor in the amount of $175,000.00 plus interest and costs.

## COUNT II
### 11 U.S.C. § 523(a)(6)

72. Plaintiff repeats and realleges all allegations contained in the preceding paragraphs as if fully set forth herein.

73. Debtor obtained money from the above referenced conveyance of the Property through willful and malicious conduct, which caused injury to Plaintiff.

74. Debtor deliberately and knowingly failed to reveal the Undisclosed Judgments entered against her.

75. In fact, Debtor swore the Undisclosed Judgments were not hers.

76. Debtor knew that if she did admit to the Undisclosed Judgments, the Closing could not take place and/or she would not receive proceeds from the conveyance of the Property.

77. Debtor deliberately and knowingly took money from the conveyance of the Property, while falsely representing that there were no encumbrances, liens, or judgments.

78. Debtor knew that her false representations on the Affidavit of Title would cause injury.

79. Debtor's conduct did cause injury to Plaintiff's Insured and to Plaintiff.

80. As a direct and proximate cause of Debtor's conduct, Plaintiff incurred loss in the amount of $175,000.00.

81. Accordingly, the debt owed to Plaintiff is non-dischargeable pursuant to 11 U.S.C. §523(a)(6) because this debt was caused by willful and malicious injury to Plaintiff.

82. Upon finding that the debt is non-dischargeable, the Court should enter a judgment in favor of Plaintiff and against Debtor in the amount of $175,000.00 plus interest and costs.

**WHEREFORE**, Plaintiff, Chicago Title Insurance Company requests that this Court:

a. Enter Judgment in its favor and against the Debtor Rosemary Joanne Walsh aka Rosemary J. Walsh, Rosemary Eaton Walsh aka Rosemary J. Eaton Walsh aka Rosemary Joanne Eaton Walsh in the amount of $175,000.00, plus interest and costs;

  b.  Determine that the Judgment is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6);

  c.  For such other and further relief as this Court deems just, equitable, and proper.

          **FIDELITY NATIONAL LAW GROUP**
          Attorneys for Creditor, Chicago Title Insurance Company

Date: May 23, 2019    By: /s/ Christopher J. Balala, Esq.
          Christopher J. Balala, Esq.
          105 Eisenhower Parkway, Suite 103
          Roseland, NJ 07068