| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-2(c)**<br><br>**Fidelity National Law Group**<br>105 Eisenhower Parkway, Suite 103<br>Roseland, New Jersey 0706<br>Tel.: 973-863-7018 / Fax: 973-535-3407<br>Christopher J. Balala, Esq. (030732010)<br>Christopher.Balala@fnf.com<br>*Counsel for Creditors*<br>*Fidelity National Title Insurance Company and*<br>*Chicago Title Insurance Company* | |
| In Re:<br><br>John Michael Walsh and Rosemary Joanne Walsh,<br><br>Debtors. | Case No. 19-13567<br><br>Chapter 7<br><br>Judge: Hon. Kathryn C. Ferguson<br><br>Hearing Date and Time: June 25, 2019 at 10 a.m. |

## OBJECTION TO DEBTORS' MOTION TO CONVERT CASE FROM CHAPTER 7 TO CHAPTER 13

TO:    THE HONORABLE KATHRYN C. FERGUSON
         United States Chief Bankruptcy Judge
         United States Bankruptcy Court for the District of New Jersey

Fidelity National Title Insurance Company ("Fidelity") and Chicago Title Insurance Company ("Chicago", collectively, "Creditors"), by and through its counsel, Fidelity National Law Group, respectfully submits this objection (the "Objection") to debtors John Michael Walsh and Rosemary Joanne Walsh's (the "Debtors") Motion to Convert Case from Chapter 7 to Chapter 13 (the "Motion") [Dkt. No. 37; 40]. In support of its Objection, the Creditors respectfully submits:

**PRELIMINARY STATEMENT**

The Debtors Motion should be denied as they have failed to prove that they are entitled to convert their case from Chapter 7 to Chapter 13 pursuant to 11 U.S.C. §706. The Motion attaches only a Certification of Debtors' Counsel riddled with hearsay statements, and is therefore deficient for the relief requested therein. Furthermore, Debtors have not proved, because they cannot prove, that they are below the debt limits for a Chapter 13 case pursuant to 11 U.S.C. §109(e). Even if this Court were to determine that Debtors' Counsel's Certification was somehow sufficient and that the Debtors were below the debt limits, the conversion is being sought in bad faith.

The Debtors' bankruptcy petition and subsequent amendments/filings are peppered with intentional inaccuracies and misstatements. Specifically, with regards to prior bankruptcy filings, business interests, insurance interests, household size, and most importantly transfers of real property. The conversion is sought only to deter the Chapter 7 Trustee's retained counsel who appears to be investigating the Debtors' financial condition and/or fraudulent bankruptcy disclosures. Such a bad faith conversion attempt is not permitted by the surrounding jurisprudence.

Finally, Debtors cite to no authority for incorporating a prior Chapter 13 Plan from another case into their current case as suggested in their Motion. Contrary to the Motion, Debtors do not have sufficient income to fund a Chapter 13 Plan. Accordingly, the Motion respectfully should be denied.

**BACKGROUND**

On February 21, 2019, the Debtor filed a voluntary petition for relief pursuant to Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. See, Certification of Counsel in Opposition to the Motion, ("Counsel Cert."), ¶3. Chicago is a creditor, who was not listed in the Debtors' bankruptcy petition and is owed $175,000.00. A proof of claim supporting this amount will be filed in advance of the bar date - currently August 19, 2019. Counsel Cert., ¶4. Fidelity is a creditor, who was not listed in the Debtors' bankruptcy petition and is owed $305,000.00. Counsel Cert., ¶5. A proof of claim supporting this amount will be filed in advance of the bar date - currently August 19, 2019. Id. Both Fidelity and Chicago's debts together exceed the debt limits set forth in 11 U.S.C. §109(e). Counsel Cert., ¶6. The Debtors failed to disclose their prior bankruptcy filing, bearing case number 18-32957 (the "2018 Bankruptcy Filing") on their bankruptcy petition, line #9. Counsel Cert., ¶7. Line #9 appears in Docket Entry No. 9 and 11, and both times neglects to disclose this prior bankruptcy case, which occurred within the past eight years. Id.

The Debtors failed to disclose their business interests, including but not limited to, those interests in Amway/URA and Walsh Legacy LLC on line #19 of their bankruptcy petition. Counsel Cert., ¶8. The amended Statement of Financial Affairs, line #4, states the Debtors receive no income from their businesses, yet John Michael Walsh proudly boasts on his LinkedIn page, "I have branched out and have ownership of a company Walsh Legacy LLC which serves students, families, and school districts." Counsel Cert., ¶9; Exhibit A. Schedule I lists no regular wage income for John Michael Walsh, yet his LinkedIn page states he is currently employed as School Administrator for The King's Christian School since July 2008. Counsel Cert., ¶10; Exhibit A. The amended Statement of Financial Affairs, line #27, states Walsh Legacy LLC began to exist on January 1, 2008, yet the State of New Jersey, Department of Treasury: Division of Revenue & Enterprise

3

Case 19-13567-KCF    Doc 42    Filed 06/17/19    Entered 06/17/19 09:58:58    Desc Main
Document    Page 4 of 10


Services' Business Record Service states Walsh Legacy LLC was originally filed in May 2005. Counsel Cert., ¶11; Exhibit B.

The Debtors failed to properly disclose their retirement and/or pension accounts on their bankruptcy petition, line #21, yet disclose alleged income from retirement and/or pension on Schedule I and the amended Statement of Financial Affairs. Counsel Cert., ¶12. The Debtors failed to disclose this income altogether on their first filed Statement of Financial Affairs. Id. Schedule I shows net household income of $11,385.00 per month. Counsel Cert., ¶13. This is the same amount included on Schedule I in the Debtor's 2018 Bankruptcy Filing. Id. Schedule J shows net household expenses of $13,620.00 per month. Counsel Cert., ¶14. This is the same amount included on Schedule J in the Debtor's 2018 Bankruptcy Filing. Id. Schedule J shows a negative "monthly net income" of $2,235.00. Counsel Cert., ¶15. Accordingly, the Debtors have no regular monthly surplus to support a Chapter 13 Plan. Counsel Cert., ¶16.

The Debtors also failed to disclose Rosemary Joanne Walsh's income from retirement and/or pension on Official Form 122C-1. Counsel Cert., ¶17. Furthermore, Official Form 122C-1 is incorrect in that it lists the household size as one yet, the Debtors themselves are two individuals and Schedule J lists three children residing the household. Counsel Cert., ¶18. The Debtors failed to disclose life insurance interest(s) in their bankruptcy petition, line #31, yet disclose this expense on Schedule J. Counsel Cert., ¶19. The Debtors failed to disclose charitable contributions on line #14 of the amended Statement of Financial Affairs, yet list $1,550.00 in monthly charitable contributions on Schedule J. Counsel Cert., ¶20.

The Debtors failed to disclose their transfer of real property located 137 7th Street, Beach Haven, New Jersey 08008 (the "Beach Haven Property") on June 30, 2017 on line #18 of the

amended Statement of Financial Affairs. Counsel Cert., ¶21; Exhibit C. The Debtors failed to disclose their transfer of real property located 1341 Simpson Avenue, Ocean City, New Jersey 08226 (the "Ocean City Property") on August 31, 2018 on line #18 of the amended Statement of Financial Affairs. Counsel Cert., ¶22; Exhibit D. The Debtors failed to disclose the debt owed to the Estate of Renee Halpecka on Schedule F of the bankruptcy petition. Counsel Cert., ¶23. The Debtors only disclose unsecured debts owed to Bank of America, Barclay's, Citi, and American Education Services on Schedule F of their bankruptcy petition. Counsel Cert., ¶24. These are the same creditors listed on Schedule F of their 2018 Bankruptcy Filing. Id.

The Debtors failed to explain how the debt owed to the Estate of Renee Halpecka "has been paid enough to lower [their] unsecured debt." Counsel Cert., ¶25. The debt owed to the Estate of Renee Halpecka has been partly satisfied by Chicago and Fidelity pursuant to obligations associated with a title insurance policy. Counsel Cert., ¶26. The Debtors now owe that money to Chicago and Fidelity and their debt amount therefore remains unchanged. Counsel Cert., ¶27. The debt owed to Chicago and Fidelity is nondischargeable, and is the subject of two separate adversary proceedings bearing case numbers 19-01971 and 19-01970, respectively. Counsel Cert., ¶28.

**LEGAL ARGUMENT**

**I. THE DEBTORS ARE INELIGIBLE TO CONVERT THE CASE**

## UNDER SECTION 706 OF THE BANKRUPTCY CODE

The Bankruptcy Code permits a Chapter 7 bankruptcy case to be converted by the debtor at any time to a case under Chapter 11, 12, or 13 of the Bankruptcy Code, provided the case has not previously been converted.  11 U.S.C. 706(a).  The debtor must be eligible to be a debtor under the new chapter.  11 U.S.C. 706(d).  Here, the Debtors are <u>ineligible</u> for Chapter 13 as they are over the debt limits set forth in Section 109(e).

The Debtors, albeit through counsel, stated that they are under the unsecured debt limits as the debt owed to their largest creditor, the Estate of Renee Halpecka, has been paid down.  This statement misleads this Court.  The Debtors want this Court to believe that the debt owed to the Estate of Renee Halpecka was either paid by them or by some bona fide payor.  In reality, it was through the Debtors fraud in transferring the Beach Haven Property and Ocean City Property, that Fidelity and Chicago were forced, pursuant to a title insurance policy, to partially satisfy the debt owed to the Estate of Renee Halpecka.  Fidelity and Chicago paid $305,000.00 and $175,000.00, respectively to the Estate of Renee Halpecka and other judgment creditors of the Debtors.

Both Fidelity and Chicago filed adversary proceedings declaring the debts owed to them nondischargeable pursuant to 11 U.S.C. §§523(a)(2) and (a)(6).  The adversary proceedings predate the Debtors' Motion.  Counsel for Fidelity and Chicago filed Notices of Appearance and Proofs of Claim from the Creditors are forthcoming.  The debt owed to Fidelity and Chicago equates to $480,000.00, which exceeds the unsecured debt limit pursuant to 11 U.S.C. §109(e) (which was $394,725.00 at the time of the Debtors' bankruptcy filing).  Accordingly, the Debtors Motion should be denied as they are ineligible for a chapter 13 bankruptcy.

6

## II. THE DEBTORS ARE NOT ACTING IN GOOD FAITH IN CONVERTING THEIR CASE AND THEREFORE THE REQUEST TO DO SO SHOULD BE DENIED

The Supreme Court of the United States, "has clarified that the debtor does not have an absolute right to convert from chapter 7 to chapter 13." In re Buccolo, 397 B.R. 527, 529 (Bankr.D.N.J. 2008) citing Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365 (2007). "A bankruptcy court may deny a motion to convert on a finding of bad faith or other 'cause.'" Id. The Third Circuit has joined in the Seventh, Ninth, and Tenth Circuits holding that the good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of circumstances." In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996) (citations omitted). "Factors relevant to the totality of circumstances inquiry may include among others, the following: the nature of the debt…; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." Id. citing In re Love, 957 F.2d 1350, 1357 (7th Cir. 1992).

Here, the Debtors have been less than truthful in their bankruptcy filings with this Court. Mysteriously, the Debtors fail to disclose the transfers of the Beach Haven Property and Ocean City Property, which occurred on June 30, 2017 and August 31, 2018, respectively. The Debtors also inaccurately completed Official Form 122C-1, failed to disclose life insurance interest(s), and income from retirement and/or pension in their amended Statement of Financial Affairs and Schedule of Assets (i.e., Schedule B). Furthermore, the Debtors have been deceitful about their business interests in Walsh Legacy LLC. The Debtors even avoid disclosing their prior 2018 Bankruptcy Filing on repeated filings in this case.

The Debtors acts and omissions in this case are akin to those in <u>Marrama</u>, where the Court denied the debtor's motion to convert his case from chapter 7 to chapter 13. In <u>Marrama</u>, the debtor sought to convert his case but was not truthful in his original petition filing. The debtor listed an interest in a Maine property at zero, where it had significant value, and had transferred that property into a newly created trust, seven (7) months prior to the chapter 7 bankruptcy filing for no consideration, and without disclosing it on the Statement of Financial Affairs. <u>Id.</u> at 369. The <u>Marrama</u> Court held that the debtor's conduct precluded him from "the honest but unfortunate debtors[s] that the bankruptcy laws were enacted to protect." <u>Id.</u> at 370, <u>citing</u>, <u>Grogan v. Garner</u>, 498 U.S. 279, 287 (1991).

"Whether it is part of the totality of circumstances in a good faith analysis or a separate cause to deny conversion, feasibility may be assessed on a motion to convert." <u>In re Buccolo</u>, 397 B.R. at 530; <u>see e.g.</u>, <u>In re Straugh</u>, 41 B.R. 757, 758 (Bankr.W.D.Pa.1984) (denying conversion motion for lack of good faith, because the chapter 13 plan was not feasible); <u>In re Sully</u>, 223 B.R. 582, 586 (Bankr.M.D.Fla.1998) (denying a motion to convert because the motion was not made in good faith and that a chapter 13 plan was not feasible); <u>In re Tardiff</u>, 145 B.R. 357, 360 (Bankr.D.Me.1992) ("[Conversion should not be permitted in circumstances where the debtor is demonstrably incapable of proposing a feasible plan."); <u>In re Lilley</u>, 29 B.R. 442, 443–444 (1st Cir. BAP 1983) (affirming lower court's denial of conversion motion because the lack of a "feasible good faith plan"). "While the feasibility requirement is not rigorous, the plan proponent must, at minimum, demonstrate that the Debtor's income exceeds expenses by an amount sufficient to make the payments proposed by the plan." <u>In re Bernardes</u>, 267 B.R. 690, 695 (Bankr.D.N.J.2001) (citations omitted); <u>see also</u>, 11 U.S.C.

8

§1325(a)(3) (a plan may not be confirmed if it has not been proposed in good faith). "Conversion may also be precluded where the totality of circumstances on the date of the filing of the motion for conversion gives rise to significant prejudice to creditors regardless of any consideration of bad faith." In re Kuhn, 322 B.R. 377 (Bankr.N.D.Ind. 2005); In re Porreco, 333 B.R. 310 (Bankr.W.D.Pa. 2005).

Here, the Debtors cannot put forth a feasible chapter 13 plan. The Debtors income and expenses have remained unchanged since their 2018 Bankruptcy Filing so they are both unlikely to change throughout the course of a plan in this case. Schedule I shows the Debtors' income is derived from social security and retirement and/or pension income. These sources of income are unlikely to change any more than a nominal amount. Schedule I shows net household income of $11,385.00 per month. Schedule J shows net household expenses of $13,620.00 per month. The Debtors have a household of five, so it is unlikely that their expenses will change in the near future as well. In fact, the Debtors expenses actually exceed their monthly income, resulting in a negative "monthly net income" of $2,235.00 per month according to Schedule J. Therefore, the Debtors cannot propose a plan that yields any monies to any of their creditors. Where the creditors would actually receive less funds in a chapter 13 versus a chapter 7 liquidation, the conversion severely prejudices creditors. Accordingly, the Motion should be denied as a chapter 13 bankruptcy for these Debtors is not viable.

## CONCLUSION

WHEREFORE, for each of the reasons set forth above, the Creditors respectfully request that the Court deny the Debtors' Motion.

Respectfully submitted,

**FIDELITY NATIONAL LAW GROUP**
*Counsel for Creditors*
*Fidelity National Title Insurance Company and*
*Chicago Title Insurance Company*


/ s/ Christopher Balala_____
Christopher J. Balala, Esq.

DATED: June 17, 2019