**McMANIMON, SCOTLAND & BAUMANN, LLC**
427 Riverview Plaza
Trenton, NJ  08611
609.695.6070
*ATTORNEYS FOR THOMAS J. ORR, CHAPTER 7 TRUSTEE*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE:<br><br>JOHN MICHAEL WALSH and<br>ROSEMARY JOANNE WALSH,<br><br>Debtors. | CHAPTER 7 OF THE BANKRUPTCY CODE<br><br>Honorable Kathryn C. Ferguson<br><br>Case No. 19-13567(KCF)<br><br>**FIRST AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES SUBMITTED BY McMANIMON, SCOTLAND & BAUMANN, LLC COUNSEL FOR CHAPTER 7 TRUSTEE, THOMAS J. ORR** |

The First and Final Application ("Application") of McManimon, Scotland & Baumann, LLC, ("Applicant"), counsel for the Chapter 7 Trustee, Thomas J. Orr, (the "Trustee"), respectfully sets forth and alleges:

**I. INTRODUCTION**

1. On or about February 21, 2019, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 101 et seq.) in the United States Bankruptcy Court for New Jersey.

2. On or about February 22, 2019, Thomas J. Orr was appointed Chapter 7 Trustee, and he qualified for and accepted said appointment.

3. On Mary 29, 2019, the Court entered an Order, effective as of May 13, 2019, authorizing the Trustee to retain the Applicant as counsel in this proceeding.

4.       From May 13, 2019 to November 11, 2021, the period of which first and final allowance is sought, the total time devoted to this matter including the attorneys, paraprofessionals and law clerks involved, as reflected in these time sheets, and the regular hourly billing rates, is summarized on the invoice annexed hereto and made part hereof as Exhibit "A".  Based upon the time devoted to this matter, and all of the other matters set forth in this Application, your Applicant seeks an award of professional fees, for this time period, of $70,383.00 together with disbursements of $2,521.10 for a total award of $72,904.10.

5.       All services for which compensation is requested by Applicant were performed for and on behalf of the Trustee and there are no agreements or understandings for the sharing of any compensation.

6.       Annexed hereto and made a part hereof as Exhibit "A" is a detailed day-by-day record of the services performed and of the time spent by employees of Applicant in connection with this matter.  The information in Exhibit "A" has been extracted from the daily time records maintained by every attorney, paraprofessional and law clerks of Applicant as a routine business practice and recorded in the ordinary course of business for the purpose of billing all clients. These billing rates are those regularly charged to Applicant's clients during the time period the services were performed by each attorney and other employees of Applicant.

## II.  SUMMARY OF SERVICES RENDERED

7.       The Trustee retained Applicant as his counsel given various potential assets of the Debtor.

8.       Importantly, a significant portion of the fees incurred by Applicant related to the significant efforts undertaken to assist the Trustee with the identification of the assets and information relating to same, while being met with resistance in cooperation by the Debtors.

9. Specifically, the Debtors had a significant pre-petition judgment entered against in them in connection with allegations of fraud, self-dealing and conversion in connection with Rosemary Walsh's role of Executor for Renee Halpecka ("Halpecka Claims").

10. An adversary proceeding objecting to the Debtors' discharge was filed by the Halpecka decedent estate relating to the Halpecka Claims, as well as adversary proceedings filed by insurance companies respecting omission of the judgment relating to the Halpecka Claims for real properties sold by the Debtors pre-petition. Applicant investigated the allegations of each adversary proceeding and assets sold, transferred or dissipated by the Debtors pre-petition.

11. In addition to serving a Rule 2004 Subpoena on the Debtors, which Applicant had to make several attempts to obtain compliance, deposed the Debtors at length and spent significant times preparing for and conducting the deposition.

12. Additionally, once it became apparent the Debtors would not voluntarily comply with the Trustee's discovery requests, Rule 2004 Subpoenas were served on various financial institutions, including Bank of America and Beneficial Bank.

13. There were also various motions which Applicant filed on behalf of the Trustee to compel the Debtors' compliance including:

14. Additionally, Applicant was forced to defend various factually and procedurally deficient motions filed by the Debtors, including:

15. After not appearing to prosecute the Motion, the Debtors made it a habit to file motions for reconsideration, out of time and without any sound legal basis for doing so.

16. The Applicant also filed an adversary proceeding objecting to the Debtors' discharge, which resulted in default judgment being entered.

17. Finally, Applicant sold property owned by the Debtors in Pinehurst, North Carolina, which resulted in an auction and is the largest asset of this bankruptcy estate.

3

18. Despite the resistance received from the Debtors, as a result of the significant and critical services provided by Applicant, the Trustee recovered significant funds through the sale of the North Carolina Property. Accordingly, Applicant respectfully requests that the Court allow the fees sought in this first and final application for compensation.

### III. STANDARDS FOR AWARD OF FEES

19. The Applicant recognizes that in order to establish an objective basis for determining the amount of compensation that is reasonable for attorneys' services, the Court should consider the following factors in awarding attorneys' fees;

    a)     time and labor required;

    b)     novelty and difficulty of the questions;

    c)     skill requisite to perform the legal services properly;

    d)     the customary fee;

    e)     whether the fee is fixed or contingent;

    f)     the amount involved and the results achieved;

    g)     time and limitation imposed by client or other circumstances;

    h)     the experience, reputation and ability of the attorneys;

    i)     the undesirability of the case; and

    j)     awards in similar cases.

See In re Busy Beavers Bldg. Centers, Inc., 19 F.3d 833 (3d Cir. 1994); Matter of First Colonial Corp. of America, 544 F.2d 1291 (5th Cir. 1977), cert. denied, 431 U.S. 904 (1977); Ross Pass Mines, Inc., v. Howard, 615 F.2d 1088 (5th Cir. 1980); and Johnson v. Georgia Highway Express, Inc., 488 F. 2d 714 (5th Cir. 1974). The Applicant also notes that a client other than a Trustee, debtor-in-possession, debtor or committee would have been required to pay the full amount of the Applicant's time charges on a monthly basis. Attorneys in bankruptcy practice are entitled to

compensation commensurate with that received by other attorneys. Indeed, the standard for determining compensation under Section 330 of the Bankruptcy Code is based on, among other factors, "the cost of comparable services other than in a case under [Title 11, U.S.C.].

20.     The Applicant's attorneys have acted in a professional capacity in numerous out-of-court creditor/debtor workouts, and in proceedings under the various Chapters of the Bankruptcy Act and the Bankruptcy Code, as attorneys for debtors and debtors-in-possession, attorneys for creditors and lessors, and as attorneys for creditors' committees, receivers and trustees in bankruptcy. The Applicant enjoys a reputation for expertise in this field and in the handling of bankruptcy and insolvency related issues.

21.     The valuation of the Applicant's services in the case is based on the following considerations:

a)     Time and labor required -- the Applicant's partners, associates and paralegals have expended hours of professional services in representing the Trustee in this case during the period covered by this application (See Exhibit "A"). This statement of time expended is prepared from the Applicant's records. The Applicant maintains records of the time expended in the performance of professional services for the Trustee, as well as for all of its clients, consisting of diary entries by individual attorneys, paralegals and clerks, which, in turn, are typed into daily data time entry sheets. The time sheets contain the name of the attorney, paralegal or clerk rendering the services, the time spent to the tenth of an hour, and a description of the legal services performed. The diary entries are usually made concurrently with the rendering of services. The time sheets are prepared by the secretaries of the attorneys generally within a day or two of when the services are rendered. This record-keeping system has been computerized and results in the generation of computer time printouts.

  b)  Novelty and difficulty of the questions -- the Applicant has resolved several difficult questions in these proceedings as detailed in this Application.

  c)  Skill required to perform the legal services properly and experience, reputation and ability of the attorneys -- the Applicant's attorneys qualify and are well known as highly skilled professionals in their respective fields.

  d)  The customary fee -- the hourly rates charged for the Applicant's partners, associates and paralegals are well within the range of those charged customarily by attorneys and paralegals with similar experience in cases of this size and complexity and in this geographic area. In addition, the Applicant has had to advance out-of-pocket costs without any prior payment.

  e)  Whether the fee is fixed or contingent -- at all times, Applicant's compensation has been contingent upon the availability of sufficient assets and funds in the Estate. The fee applied for is based upon the hourly charges for recorded time and is not computed or derived from any fixed fee arrangement.

  f)  Time and limitations imposed by client or other circumstances -- since the date of its employment, the Applicant has found it necessary to expend a substantial amount of time which has either delayed or precluded the Applicant's other legal work to some degree.

  h)  The experience, reputation and ability of the attorneys -- over the past years, the Applicant has participated in and represented various parties in numerous bankruptcy proceedings in the following capacities:

    1)  attorneys for Creditors' Committees in Chapter 11 cases;

    2)  attorneys for Debtors in Chapter 7, 11 and 13 cases;

    3)  attorneys for Trustees in Chapter 7 and Chapter 11 cases;

    4)  attorneys for secured creditors in Chapters 7, 11 and 13 cases; and

        5)    attorneys for unsecured creditors and lessors in reorganization and liquidation proceedings.

    i)    The undesirability of the case -- this case may be said to be undesirable from the following standpoints:

        1)    the delay and uncertainty in obtaining full compensation in comparison to other cases;

        2)    additional time and work involved in preparing and submitting applications for compensation in the form and manner required by law as compared with billings in other cases; and

        3)    time demands on the Applicant to meet emergencies and filing dates.

    j)    Awards in similar cases -- allowances to attorneys after full consideration of the foregoing factors to be applied in the awarding of a fee have heretofore been allowed and awarded by this Bankruptcy Court and other bankruptcy courts in cases within the range of hourly charges as set forth in the Applicant's Application. The Applicant believes the amount requested by it is commensurate with fee awards in cases of this size and complexity.

## IV.  CONCLUSION

22.    Applicant has attempted in this Application to be as concise as possible and not to elaborate unnecessarily on matters that are the subject of court proceedings.

23.    Applicant's experience indicates that not all time actually devoted by its directors and associates with respect to clients' affairs is always entered in its time records. Occasionally lawyers and other professionals do not record all of the time spent in legal matters. Often lawyers forget to record short conferences and miscellaneous telephone calls. For these reasons, the Court should regard the aggregate of recorded hours reported in the invoice to be a conservative compilation of the time actually expended.

24. While the services described in this Application are measured by the standards propounded by the various Bankruptcy Courts - the nature and extent of the services, the complexity and urgency of the problems presented, the time expended, the result obtained, the expertise required - Applicant respectfully submits that the fees requested represent the fair and reasonable value for the services rendered for the period of time described herein.

25. This is a first and final application. Applicant does not anticipate the need for further supplemental applications.

26. Annexed hereto and made a part hereof as Exhibit "B" is an Affidavit of Andrea Dobin submitted pursuant to Section 504 of the Bankruptcy code.

27. Applicant also seeks reimbursement of its actual out-of-pocket disbursements reasonably and necessarily incurred in the rendering of professional services of $2,521.10. The disbursements are clearly identified and itemized in the invoice and, are within the limits allowed by the Bankruptcy Judges in this District.

**WHEREFORE**, Applicant requests that the first and final allowance be made in the sum of $70,383.00 as compensation for professional services rendered, and in the sum of $2,521.10 for reimbursement for actual and necessary costs and expenses incurred, for a total of $72,904.10.

McMANIMON, SCOTLAND &
BAUMANN, LLC


　　　　　/s/ *Andrea Dobin*
　　　　　　Andrea Dobin

Dated: 11.15.2021

4870-5672-5251, v. 1